IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ANDREW ROBERT COATS, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | No. 3:19-cv-01277-G (BT) |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| Respondent. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Andrew Robert Coats filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2241, in which he argues that the Bureau of Prisons (BOP) improperly computed his federal sentence by failing to give him credit for time served in a federal facility while he was on a writ. As explained below, the Court should deny Coats's petition because the BOP correctly computed his sentence. In the alternative, the Court should dismiss the petition as likely moot.

I.

On May 24, 2019, Coats filed his petition. Pet. (ECF No. 3). At the time, he was in BOP custody at the Federal Prison Camp in Seagoville, Texas (FPC Seagoville) serving a 150-month sentence for mail fraud. App. 3 (ECF No. 10). Coats was incarcerated at FPC Seagoville beginning on December 22, 2016. *Id.* However, he had been in custody—either state or federal—continuously for at least ten years prior to that.

1

Dallas County Sheriff's officers arrested Coats on March 14, 2006, pursuant to a parole violation warrant issued by the Texas Department of Criminal Justice (TDCJ).[1] *Id.* Then, in May 2006, the state revoked his parole, and Coats was transferred to TDCJ. *Id.* (citing Attach. 2, Dallas County Sheriff's Department Booking Records). Coats remained in TDCJ custody for almost three years—until a federal information was filed in the United States District Court for the Eastern District of Texas. *Id.* 4 (citing Attach. 3, PACER docket, Case No. 4:09-cr-00047 (E.D. Tex.)).

On April 3, 2009, the federal court issued a Writ of Habeas Corpus *Ad Prosequendum* for Coats. *Id.* (citing Attach. 4, Writ of Habeas Corpus Ad Prosequendum). And two weeks later, the Eastern District of Texas "borrowed" Coats from state custody pursuant to the federal writ. *Id.* (citing Attach. 5, United States Marshals Service 129). On January 15, 2010, the federal court sentenced Coats to 150 months' imprisonment, followed by a three year term of supervised release, and ordered him to pay $949,345.53 in restitution as punishment for his conviction on two counts of mail fraud in violation of 18 U.S.C. § 1341. *Id.* (citing Attach. 6, Judgment and

---

[1] The Dallas County Jail Records state that that the arresting agency was TDCJ, but the Dallas County Sheriff's Office Records Department confirmed the arrest was made by their agency pursuant to a TDCJ warrant. App. 3 (ECF No. 10). "TDCJH-OIG" was listed as the arresting agency because this was the agency for whom Coats was being held. *Id.* (citing Attach. 1, Dallas County Jail Records, page 2, "Arresting Agency").

2

Commitment Order). Coats was then returned to state authorities. *Id.* On May 21, 2012, he was paroled from TDCJ and released to exclusive federal custody to begin his federal sentence. *Id.* (citing Attach. 5, United States Marshals Service 129; Attach. 7, Texas Parole Documents).

The BOP computed Coats's sentence as commencing on May 21, 2012—the date he was released from state custody. *Id.* It credited all prior custodial time toward his state term of imprisonment and did not apply any prior custody credit to his federal sentence. *Id.* The BOP estimated Coats would earn 675 days of good conduct time and thus projected his release date as January 15, 2023. *Id.* (citing Attach. 8, Public Information Inmate Data). However, on February 12, 2020, Coats was placed on probation pursuant to the First Step Act of 2018 (FSA). And now, according to the BOP's website, the BOP released Coats from federal custody on January 20, 2022. *See* https://www.bop.gov/mobile/find_inmate/byname.jsp#inmate_results (last visited Mar. 8, 2022).

In his petition, Coats argues that the BOP miscalculated his projected release date. Pet. 3 (ECF No. 3). He claims that BOP previously projected his release date to be December 18, 2018. *Id.* Further, he claims that his state revocation sentence "was caused" by his arrest on the federal offense, and for this reason, all the time he spent in state custody should be credited toward his federal sentence. *Id.* 4. Finally, Coats argues that the time he

3

spent in state custody for the parole revocation should be taken into consideration under United States Sentencing Guidelines (U.S.S.G.) § 5G1.3. *Id.* 3-6.

II.

A. The BOP properly determined that Coats's federal sentence commenced on May 21, 2012, the date he was released from state custody.

"A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." 18 U.S.C. § 3585(a); BOP Program Statement 5880.28 (*available on https://www.bop.gov/policy/progstat/5880_028.pdf*).

Here, in support of his arguments that the BOP failed to give him proper credit on his federal sentence, Coats relies on U.S.S.G. § 5G1.3. However, this reliance is misplaced. Section 5G1.3 permits a federal court at sentencing to reduce a sentence by the amount of time the court is aware will not be credited by the BOP. U.S.S.G. § 5G1.3(b). At Coats's sentencing in the Eastern District of Texas, the District Court did not apply § 5G1.3 to his sentence. Rather, the District Court simply imposed a 150-month sentence and ordered it to run consecutive to his state sentence. App. 27 (ECF No. 10) (Judgment).

4

Moreover, Coats was sentenced in the Eastern District of Texas on January 15, 2010, but his federal sentence did not commence on that date. He was still in state custody serving the remainder of that sentence. Coats was only in federal court by virtue of a writ of habeas corpus *ad prosequendum*. App. 20 (ECF No. 10). Consequently, his federal sentence commenced on May 21, 2012, the day he was released from state custody. App. 22-24 (ECF No. 10).

BOP Program Statement 5880.28 provides:

> If the prisoner is serving no other federal sentence at the time the sentence is imposed, and is in <u>exclusive</u> federal custody (not under the jurisdiction of a federal writ of habeas corpus *ad prosequendum*) at the time of sentencing on the basis of the conviction for which the sentence is imposed, the sentence commences on the date of imposition, even if a state sentence is running along currently.

(available on https://www.bop.gov/policy/progstat/5880_028.pdf) (emphasis in original). Coats was not in exclusive federal custody when he was sentenced in the Eastern District of Texas on January 15, 2010. Rather, he was appearing pursuant to a writ of habeas corpus *ad prosequendum*. App. 20 (ECF No. 10).

"As between the state and federal sovereigns, primary jurisdiction over a person is generally determined by which one first obtains custody of, or arrests, the person." *United States v. Cole*, 416 F.3d 894, 897 (8th Cir. 2005). "If, while under the primary jurisdiction of one sovereign, a defendant is transferred to the other jurisdiction to face a charge, primary

5

jurisdiction is not lost but rather the defendant is considered to be 'on loan' to the other sovereign." *Id.* at 896–97 (quotation omitted). "As a general rule, the first sovereign to arrest a defendant has priority of jurisdiction for trial, sentencing and incarceration." *Thomas v. Brewer*, 923 F.2d 1361, 1365 (9th Cir.1991); *see also United States v. Gonzalez*, 1998 WL 691080, at *1 (S.D.N.Y. Sept. 30, 1998). The same is true in the Fifth Circuit:

> The law is clear in this Circuit that, if a defendant is in state custody and he is turned over to federal officials for federal prosecution, the state government's loss of jurisdiction is only temporary. The prisoner will be returned to state custody at the completion of the federal proceedings or the federal sentence if the federal government wishes to execute it immediately.

*Causey v. Civiletti*, 621 F.2d 691, 693 (5th Cir.1980) (citing *Zerbst v. McPike*, 97 F.2d 253 (5th Cir. 1938)). Title 18, United States Code, Section 3584(a) provides:

> If multiple terms of imprisonment are imposed on a defendant at the same time, or if a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment, the terms may run concurrently or consecutively, except that the terms may not run consecutively for an attempt and for another offense that was the sole objective of the attempt.

The District Court for the Eastern District of Texas ordered Coats's federal sentence to run consecutive to the state term he was serving at the time. App. 27 (ECF No. 10) (Judgment). Therefore, the BOP correctly determined that his federal sentence commenced on the date his state sentence ended: May 21, 2012.

B. The BOP properly calculated Coats's sentence with all proper credit for his prior state custody.

Only the Attorney General, through the BOP, may compute a prisoner's federal sentence. *United States v. Wilson*, 503 U.S. 329, 334-35 (1992); *see also United States v. Dowling*, 962 F.2d 390, 393 (5th Cir. 1992) ("[C]redit awards are to be made by the Attorney General, through the [BOP], after sentencing."). "The BOP—as opposed to the federal courts—is the entity authorized to determine where a federal sentence will be served, when it begins, and, in certain respects, how long it will last." *United States v. Cibrian*, 374 F. App'x 524, 529 (5th Cir. 2010) (per curiam) (emphases omitted) (citing 18 U.S.C. § 3621). The BOP calculates a prisoner's sentence and determines what credit, if any, will be awarded for time spent in custody prior to the start of the federal sentence. *See Wilson*, 503 U.S. at 334, 337. A defendant is given credit for any time he spent in official detention prior to the commencement of his sentence. 18 U.S.C. § 3585(b). "[F]ederal courts have 'no authority to violate the statutory mandate that federal authorities need only accept prisoners upon completion of their state sentence and need not credit prisoners with time spent in state custody.'" *Leal v. Tombone*, 341 F.3d 427, 429-430 (5th Cir. 2003) (the nine months he spent in state custody was credited toward another sentence, so the BOP was not required to also credit the time toward his federal sentence) (citing *DelGuzzi v. United States*, 980 F.2d 1269, 1271 (9th Cir. 1992) (per curiam)). "In other words,

7

federal inmates are not entitled to 'double-credit' to both state and federal sentences for time spent in pre-sentence custody." *Edison v. Berkebile*, 349 F. App'x 953, 956 (5th Cir. 2009) (citing 18 U.S.C. § 3585(b)).

When the BOP calculates a sentence, it first determines the date the sentence commenced and then it determines whether the inmate is entitled to any credit for time spent in detention prior to the commencement of his sentence. The BOP correctly determined that Coats is not entitled to any credit for the time he spent in state custody. The time he spent in state custody cannot also be credited toward his federal sentence. *See* 18 U.S.C. § 3585(b) (noting that a defendant is entitled to credit for time he spent in official detention prior to the date his sentence commences "that has not been credited against another sentence"). Therefore, Coats's federal sentence was properly calculated. *See Pierce v. Fleming*, 150 F. App'x 344, 345 (5th Cir. 2005) (per curiam) ("[B]ecause the record indicates that the time that Pierce spent in federal custody pursuant to a writ of habeas corpus ad prosequendum was credited against his state sentence, the BOP correctly applied 18 U.S.C. § 3585(b)(2) when it did not include this time as a credit toward Pierce's federal sentence.") (citing *Vignera v. Attorney Gen. of the United States*, 455 F.2d 637, 637-38 (5th Cir. 1972)).

C. <u>Coats's reliance on the Sentencing Guidelines is misplaced and inconsistent with the law</u>.

8

Coats also argues that the U.S.S.G. indicate when a person serves time on a state revocation offense, the U.S.S.G. will ensure a reasonable punishment of the instant offense, and the BOP can grant credit for time served on revocation. Pet. 2-3 (ECF No. 3). Coats further argues that U.S.S.G. § 5G1.3 could apply to his case. Pet. 3-4 (ECF No. 3).

Coats's reliance on U.S.S.G. § 5G1.3 to alter his sentence after it has been lawfully imposed is misplaced. The U.S.S.G. do not provide the BOP with any authority to alter a previously imposed federal sentence. Rather, the U.S.S.G. serve merely as advisory guidance for the District Court when fashioning an appropriate sentence for federal defendants. *See United States v. Booker*, 543 U.S. 220 (2005); *see also United States v. Zamora*, 2022 WL 325466, at *1 (5th Cir. Feb. 3, 2022) (per curiam).

Here, the District Court in the Eastern District of Texas was clear that Coats's sentence was 150 months' imprisonment. In the District Court's Judgment it directed, "This sentence shall run consecutive to any sentence the defendant received for his parole revocation." App. 27 (ECF No. 10). In sum, the federal court imposed a 150-month sentence, and Coats is not entitled to any credit for time spent in state custody prior to commencing his federal sentence on May 21, 2012.

For these reasons, the BOP calculated Coats's sentence correctly. While he was sentenced in the Eastern District of Texas on January 15, 2010, he was in state custody at that time and not taken into federal custody until May

9

21, 2012, when he completed his state sentence and commenced his federal sentence. Consequently, Coats's petition should be denied.

D. <u>In the alternative, Coats's petition should be dismissed because it is likely moot</u>.

According to the BOP's website, the BOP released Coats—who is 79 years old—from federal custody on January 20, 2022. https://www.bop.gov/mobile/find_inmate/byname.jsp#inmate_results (last visited Mar. 8, 2022). This was after he was released to probation under the FSA on February 12, 2020. Coats has not filed a notice of change of address with the Court. Neither Coats nor Respondent has updated the Court with new information regarding Coats's custody status.

A case becomes moot "if an event occurs during the pendency of the action that makes it impossible for the court to grant 'any effectual relief whatever' to a prevailing party." *Church of Scientology v. United States*, 506 U.S. 9, 12 (1992) (citing *Mills v. Green*, 159 U.S. 651, 653 (1895)); *United States v. Jackson*, 771 F. 3d 900, 903 (5th Cir. 2014). Here, Coats's release from the BOP provided him the relief he ultimately sought in his petition. The petition should therefore be dismissed as likely moot.[2] *See Bailey v.*

---

[2] It is not clear whether Coats is currently serving a term of supervised release. Although the BOP website indicates that he was released from custody on January 20, 2022, Coats may still be on supervised release. If, in fact, Coats is on supervised release, then his petition might not be moot. *See, e.g., Johnson v. Pettiford*, 442 F.3d 917, 918 (5th Cir.2006) ("In this case, the possibility that the district court may alter [petitioner's] period of

*Southerland*, 821 F. 2d 277, 278-79 (5th Cir. 1987) (per curiam) (holding that a federal prisoner's appeal from the denial of a § 2241 petition seeking the expungement of disciplinary reports and restoration of good time credit was moot because the court could not provide him with relief after he was released, and the prisoner did not allege that he was subject to future consequences because of the incident report); *see also Belasco v. Warden*, 156 F. App'x 671, 671 (5th Cir. 2005) (holding issues raised on appeal relating to calculation of good-time credits mooted by petitioner's release from BOP custody); *Salinas v. U.S. Marshals Serv.*, 111 F. App'x 782, 783 (5th Cir. 2004) (per curiam) (dismissing petitioner's appeal on a habeas petition challenging confinement based on the validity of a federal warrant and the computation of the sentence "[b]ecause [petitioner] has already been released from federal custody, there is no relief this court can grant").

## III.

For the foregoing reasons, the Court should deny Coats's § 2241 petition or, in the alternative, dismiss it as likely moot.

Signed March 9, 2022.

_____

supervised release . . ., if it determines that he has served excess prison time, prevents Johnson's petition from being moot.") (citing *Ojo v. INS*, 106 F .3d 680, 681 n. 2 (5th Cir. 1997) (holding that the petitioner who had completed his prison term and was in his three-year term of supervised release was "in custody" for habeas purposes)).

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).